UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA CERLETTI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ECOLAB, INC.,<br><br>　　　　Defendant. | Case No. 18-cv-00008-SK<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION**<br><br>Regarding Docket No. 6 |

Defendant Ecolab, Inc. brings a motion to compel arbitration of Plaintiff Melissa Cerletti's claims. Plaintiff opposes the motion. After carefully reviewing the parties' written arguments and after hearing oral argument, the Court DENIES Defendant's motion without prejudice.

**BACKGROUND**

Plaintiff worked for Defendant from December 2002 until December 2016, and she alleges that Defendant wrongfully terminated her employment as a result of retaliation for reporting sexual harassment and gender and disability discrimination. (Complaint at Dkt. 1-2, ¶¶ 10, 18, 46.) After her employment ended, Plaintiff obtained documents from Defendant that were in Plaintiff's personnel file, and included in the file was a confirmation electronic mail message referencing an arbitration agreement. (Dec. of B. Mora at Dkt. 10-2, ¶¶ 3, 5, 6.) Defendant did not provide a copy of the signed arbitration agreement. (*Id.*) After Plaintiff attempted to obtain a copy of the signed arbitration agreement and after Defendant failed to provide a copy, Plaintiff filed the action in state court. (*Id.*, ¶6.) The lawsuit alleges violations of the Fair Employment & Housing Act ("FEHA"), Cal. Government Code § 12900; violation of Cal. Labor Code § 201 *et seq.*; and wrongful termination. (Dkt. 1-2.) In turn, Defendant removed this action to federal

court. (Dkt. 1.) Defendant now moves for an order compelling Plaintiff to submit her claims to binding arbitration in accordance with an arbitration agreement and dismiss or stay the proceedings pending arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4 *et seq.* ("FAA") and the California Arbitration Act ("CAA"), Cal. Code of Civ. Proc. § 1281.2. Plaintiff opposes the motion because she disputes that she executed an arbitration agreement.

Defendant asserts that there is an executed Ecolab Mediation and Arbitration Agreement ("Agreement") between Plaintiff and Defendant. Defendant claims that Plaintiff electronically signed the Agreement, as proved by an electronic mail message dated October 15, 2014 that confirms the Agreement. Defendant's support for its position is based on the Declaration of Jennifer Friedman. (Dkt. 6-2.) Friedman states that, since April 2017, she has held the position of Human Resources Representative of Employee Relations and Compliance at Ecolab and that she has worked at Ecolab since November 2013. (*Id.,* ¶ 2.) She does not provide her position or and does not state she worked in human resources prior to April 2017, but at hearing Defendant identified her as a lower-level employee in the same department in 2014.

In her declaration, Friedman describes the implementation of the Ecolab Association Resolution Resource Program (EARR), in which Defendant distributed copies of the Agreement to employees for their signatures. Specifically, on October 3, 2014, the Executive Vice President of Human Resources sent an electronic mail message to all employees introducing the EARR program. (*Id.,* ¶ 5.) The electronic mail message asked employees to sign the Agreement by October 22, 2014 and told employees that they would receive a training module on October 8, 2014. (*Id.,* ¶ 6.) On October 8, 2014, employees received an electronic mail message with a link to a Corpedia online training module about the EARR program, with the opportunity to sign the Agreement electronically. (*Id.* ¶8.) If employees agreed to be bound by the Agreement, they were directed to click the "Agree" button, which required the employee to enter the last five digits of his or her unique identification number. (*Id.,* ¶ 9.) Signing the Agreement triggered a confirmation electronic mail message, and a copy of the confirmation message was kept in the employee's personnel file. (*Id.*)

Friedman concludes that, because Plaintiff was an employee of Defendant at the time it

rolled out the EARR program, Defendant sent a copy of the Agreement to her employee electronic mail message address. (*Id.,* ¶ 10.) Friedman also concludes that Plaintiff received confirmation that that Plaintiff agreed to the Agreement via her work electronic mail address "as reflected in [Plaintiff's] personnel file." (*Id.*)

The confirmation electronic mail message is addressed to "Melissa Cerletti" at melissa.cerletti@ecolab.com and dated 10/15/2014. (Dkt. 6-2.) The confirmation message states: "This email serves as acknowledgment that you, as an Ecolab associate, and Ecolab, have entered into a mutually binding agreement as stated below. This agreement is also signed by Laurie Marsh, Executive Vice President, Human Resources, acting as the official representative of Ecolab." (*Id.*) The confirmation message outlines in full detail the "Ecolab Mediation and Arbitration Agreement." (*Id.*)

Plaintiff maintains that there is no agreement to arbitrate between the parties. (Dec. of M. Cerletti at Dkt. 10-3, ¶¶ 3, 10.) She states that she did not receive the October 3, 2014 electronic mail message announcement concerning EARR program, that she did not receive the October 8, 2014 electronic mail messages regarding the program, that she did not engage a unique user name and password to log onto the program, that she did not review the consent policy, that she did not sign the Agreement by clicking on the "Agree" button, and that she did not receive the confirmation electronic mail message that she agreed Defendant's policy. (Dec. of M. Cerletti at Dkt. 10-3, ¶¶ 5-14.) Plaintiff states that she did not receive the copy of the text of the Agreement, consent policy, training model, or confirmation electronic mail message until after her employment was terminated and after her counsel requested copies of those documents in July 2017. (*Id.,* ¶ 16.)

Defendant conceded at oral argument that it does not have a signed copy of the Agreement.

## DISCUSSION

**A. Legal Standard**

The FAA applies to arbitration agreements in any contract affecting interstate commerce.

3

*Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 118-19 (2001); 9 U.S.C. § 2.[1] The FAA's "primary purpose is to ensure that private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis. Inc. v. Bd. of Trs. Of Leland Stanford Junior Univ.,* 489 U.S. 468, 479 (1989). Therefore, an aggrieved party may petition a United States district court for an order directing that arbitration proceed as provided for in the arbitration agreement. 9 U.S.C. § 4. Once the matter is referred to arbitration, the district court shall stay the federal proceeding. *Id.,* § 3.

Under the FAA, arbitration must be compelled where: (1) a valid agreement to arbitrate exists; and (2) the dispute falls within the scope of that agreement. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000). The FAA reflects a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)). However, arbitration "is a matter of consent, not coercion." *Volt,* 489 U.S. at 479. The FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility v. Concepcion,* 563 U.S. 333, 339 (2011) (citing *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)).

A party seeking to compel arbitration must prove by a preponderance of the evidence the existence of an arbitration agreement, and a party opposing the petition bears the burden of proving by a preponderance of evidence any fact necessary to its defense. *Olvera v. El Pollo Loco, Inc.,* 173 Cal.App.4th 447, 453 (2009) (citing *Rosenthal v. Great Western Fin. Securities Corp.,* 14 Cal.4th 394, 413 (1996)). Where the parties agreed to arbitrate, courts apply a presumption of arbitrability as to particular grievances, "and the party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable." *Wynn Resorts, Ltd., v. Atlantic-Pacific Capital, Inc.,* 497 Fed.Appx. 740, 742 (9th Cir. 2012) (internal citations omitted).

---

[1] Likewise, the CAA provides for enforcement of a valid arbitration agreement. *See* Cal. Code Civ. Proc. § 1281.2; *Armendariz v. Foundation Psychcare Services, Inc.,* 24 Cal.4th 82 (2000).

Therefore, courts should "construe ambiguities concerning the scope of arbitrability in favor of arbitration…." *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 66 (1995).

In determining whether to compel arbitration, the court may not review the merits of the dispute; rather, the role of the court is limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.,* 533 F.3d 114, 119 (9th Cir. 2008). If the answers to these questions are yes, the court must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985).

The principles of state contract law are applied in determining the validity of the arbitration agreement. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995); *Adams,* 279 F.3d at 892. An arbitration agreement must be in writing, although it need not be signed by the party to whom it applies, as acceptance may be implied in fact. *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev't (US), LLC,* 55 Cal.4th 233, 236 (2012). An employee need not read the arbitration clause for it to be binding. *Id.* When an employer unilaterally imposes an arbitration policy on its employees, "continued employment constitutes … acceptance of [the] agreement by [the] employer." *Craig v. Brown & Root, Inc.,* 84 Cal.App.4th 416, 420 (2000). However, there can be no implied consent without receipt or knowledge of the agreement. *See Metters v. Ralphs Grocery Store Co.,* 161 Cal.App.4th 696, 702 (2008). Further, where dispute resolution policies or agreements expressly require an employee's signature to be valid and no signature exists, California courts have denied motions to compel arbitration. *Gorlach v. Sports Club Co,* 209 Cal.App.4th 1497 (2012).

Courts have found sufficient evidence of consent despite lack of explicit agreement by plaintiff. In *Craig v. Brown & Root, Inc.,* the California Court of Appeals held that the employee's continued employment constituted consent to the arbitration agreement notwithstanding the fact that she never signed an acknowledgement form or had knowledge of the dispute resolution program. 84 Cal.App.4th 416. There, the employer presented evidence that it mailed the employee a copy of the policy to her correct address and that the copy of the policy was not returned, and those facts created a presumption that she received a copy of the policy. *Id.* at

5

420. In *Davis v. Nordstrom, Inc.,* the Ninth Circuit held that unilateral changes to the terms of the employee handbook that included changes to the arbitration agreement could be enforced, so long as the employer has given notice of the changed terms. 755 F.3d 1089, 1094 (2014). In that case, Nordstrom sent a letter to plaintiff that the terms would go into effect thirty days later. *Id.* In *Kruzich v. Chevron, Corp.,* the employer's dispute resolution policy expressly said that the continued employment at Chevron means that the employee agreed to be bound by the arbitration agreement. 2011 WL 6012959, at *4 (N.D. Cal. Dec. 1, 2011). Because the employee continued his employment, the court held that the employee agreed to be bound by the arbitration agreement. *Id.* In *Hicks v. Macy's Department Stores, Inc.,* the employer instituted a voluntary binding arbitration program in which the employee was required to submit an opt-out form or be bound. 2006 WL 2595941, at *1-3 (N.D. Cal. Sept. 11, 2006). The employee's failure to opt-out was deemed acceptance to the agreement and revised terms of employment. *Id.* The key to those cases, though, is that the employer actually sent the notice of arbitration to the employee.

**B. Analysis**

Plaintiff does not directly address whether she gave implied consent to be bound to the Agreement as the result of her continued employment with Defendant; rather, she maintains that she lacked all knowledge of the Agreement. She alleges that she never received any notice from Defendant indicating that her continued employment constituted her consent to the Agreement. Defendant, on the other hand, maintains that the acknowledgement in Plaintiff's personnel file is sufficient to establish Plaintiff's knowledge of the Agreement and Plaintiff's consent to its terms.

Defendant relies on the Friedman Declaration [2] to establish that Plaintiff must have executed the Agreement. (Dkt. 6-2.) Friedman has not established that she has knowledge beyond her own personal experience as an employee regarding the Defendant's procedure for

---

[2] Plaintiff objects to the Declaration of Jennifer Friedman and asks that it be stricken on the grounds that it lacks personal knowledge. The objection is OVERRULED to the extent that Ms. Friedman's declaration discusses the general policy and procedure of the Human Resources Department in 2014. However, the objection is SUSTAINED as to her personal knowledge concerning her own receipt of the documents, and the objection is SUSTAINED regarding the specific electronic procedures used for the implementing the EARR training and agreement for which Friedman has not laid a sufficient foundation.

6

sending information about the Agreement to all employees.  Friedman states that Plaintiff received an electronic mail message regarding the Agreement "because all employees were sent notification," but Friedman cannot explain how she reached that conclusion.  (Dkt. 6-2, ¶ 10.)  There is no evidence in the record from a person with personal knowledge about the sending of the initial electronic mail message and the inner workings of the system.  In addition, Plaintiff expressly denies that she received any electronic notification confirming that she agreed to the mediation and arbitration policy.  (Dkt. 10-3, ¶ 14.)  Plaintiff also states that her managers had access to her internal accounts and that changing a password remotely was "extremely simple" and based on a telephone call to the "Technical Support or IT" group.  (*Id.* ¶ 4.)  Although Friedman cites to and includes as an exhibit the confirmation message, there is also no explanation from a person with personal knowledge about the manner in which the confirmation electronic mail message was placed in Plaintiff's personnel file.

Here, there is no dispute that the Agreement and the module that lead up to it include the warning that, by continuing employment with Defendant, the employee agrees to be bound by the Agreement.  However, Defendant has not established by a preponderance of the evidence that it sent this message to Plaintiff.   Defendant does not submit evidence from a person with knowledge about the sending of the messages and thus cannot meet its burden to show the existence of the Agreement.

Therefore, the Court DENIES the motion without prejudice.  If Defendant intends to bring a further motion, it must do so swiftly to avoid any assertion of waiver and to avoid any prejudice to Plaintiff.  Given that the Court has not made a determination as to Plaintiff's claims of unconscionability, Plaintiff may renew these arguments should another motion be brought by Defendant.

**IT IS SO ORDERED**.

Dated: February 27, 2018

_____
SALLIE KIM
United States Magistrate Judge