UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA CERLETTI,<br><br>   Plaintiff,<br><br>v.<br><br>ECOLAB, INC.,<br><br>   Defendant. | Case No. 18-cv-00008-SK<br><br>**ORDER VACATING HEARING AND GRANTING RENEWED MOTION TO COMPEL ARBITRATION**<br><br>Regarding Docket No. 16 |

Defendant Ecolab, Inc. renews its motion to compel arbitration of Plaintiff Melissa Cerletti's claims. Plaintiff opposes the motion. Pursuant to Civil Local Rule 7-1(b), the Court finds that the motion to dismiss which has been noticed for hearing on Monday, April 30, 2018 at 9:30 a.m., is appropriate for decision without oral argument. Accordingly, the hearing date is hereby VACATED. After carefully reviewing the parties' written arguments and after hearing oral argument, the Court GRANTS Defendant's motion.

**BACKGROUND**

Plaintiff Melissa Cerletti worked for Defendant Ecolab, Inc. from December 2002 until December 2016. (Complaint at Dkt. 1-2, ¶¶ 10, 46.) Plaintiff alleges that Defendant wrongfully terminated her employment in retaliation for reporting sexual harassment and gender and disability discrimination. (Complaint at Dkt. 1-2, ¶¶ 18, 46.) After her employment ended, Plaintiff obtained the documents contained in her personnel file from Defendant. (Mora Dec. at Dkt. 20-2, ¶ 2.) Included in the file was an electronic mail message of confirmation, referencing an arbitration agreement. (Dkt. 20-2, ¶ 4.) Defendant did not provide a copy of the signed arbitration agreement. (Dkt. 20-2, ¶ 4.) After attempting to obtain a copy of the signed arbitration agreement, which Defendant failed to provide, Plaintiff filed an action in state court. (Dkt. 20-2,

¶¶ 5-7.) The lawsuit alleges violations of the Fair Employment & Housing Act ("FEHA"), Cal. Government Code § 12900; violation of Cal. Labor Code § 201 *et seq.*; and wrongful termination. (Dkt. 1-2.) In turn, Defendant removed this action to federal court. (Dkt. 1.)

**A.    Procedural History**

In January, Defendant moved for an order compelling Plaintiff to submit her claims to binding arbitration in accordance with an arbitration agreement and asking the Court to dismiss or stay the proceedings pending arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4 *et seq.* ("FAA") and the California Arbitration Act ("CAA"), Cal. Code of Civ. Proc. § 1281.2. Plaintiff opposed the motion, disputing that she executed an arbitration agreement. This Court denied Defendant's motion without prejudice on the grounds that Defendant failed to provide evidence based on personal knowledge establishing that Plaintiff executed an arbitration agreement. (Order at Dkt. 14.)

Defendant now renews its motion to compel arbitration and submits new evidence in its support. (Motion at Dkt. 16.) Defendant again asserts that there is an executed agreement, the "Ecolab Mediation and Arbitration Agreement" ("Agreement") between Plaintiff and Defendant. This time, Defendant submits three declarations in support of its motion, those of Marla Haley, Katherine Bjorkman, and Jack Anderson.

**B.    Defendant's Evidence**

Marla Haley was the Director of Payroll and HR information Systems at Ecolab from 2005-2015. (Haley Dec. at Dkt. 16-1, ¶ 2.) Haley worked with third party, Corepedia, to implement the Ecolab Associate Resolution Resource Program ("EARR Program"). (Dkt. 16-1, ¶¶ 3-6.) The EARR Program included a training module and the Agreement for employees to sign. (Dkt. 16-1, ¶ 6.) Haley was responsible for implementing the training and managing the EARR Program. (Dkt. 16-1, ¶ 6.)

In October 2014, Katherine Bjorkman, Human Resources Representative II in the Employee Relations Department at Ecolab, was tasked with maintaining and tracking the implementation of the EARR Program. (Bjorkman Dec. at Dkt. 16-2, ¶ 3.)

Jack Anderson has worked for Ecolab for eighteen years in the information technology

1  group and is the Lead Security Engineer in the Global Information Security Group.  (Anderson
2  Dec. at Dkt. 16-3, ¶ 2.)  Anderson is familiar with the archiving and security protocols related to
3  information technology and preservation of information.  (Dkt. 16-3, ¶ 2.)  Therefore, Anderson
4  has access to Plaintiff's archived electronic mail messages from 2014.  (Dkt. 16-3, ¶¶ 2-6.)

5  The three declarations provide evidence regarding the implementation of the EARR
6  Program, its management, and the data Ecolab maintains regarding the EARR Program.  When the
7  EARR Program was ready to implement, Haley provided Corepedia with a list of electronic mail
8  messages that included every Ecolab employee with an email address in the United States.  (Dkt.
9  16-1, ¶ 7.)  Haley then worked with the Global Communications team, which included Bjorkman,
10  to draft the communication that would be sent to employees from the sender "HR
11  communications" at the email address HRCommunicationsNA@ecolab.com.  (Dkt. 16-1, ¶ 8; Dkt.
12  16-2, ¶ 3.)  Laurie Marsh, the Executive Vice President of Human Resources, signed the
13  communication.  (Dkt. 16-1, ¶ 8; Dkt. 16-2, ¶ 4.)  Ecolab sent the initial communication to all
14  employees on October 8, 2014, and the communication contained instructions on how to log into
15  the Corepedia training module.  (Dkt. 16-1, ¶ 9; Dkt. 16-2, ¶ 5.)  Each electronic mail message had
16  a unique link with a unique password for each employee to access the training module and
17  Agreement.  (Dkt. 16-1, ¶ 9.)

18  Once the employee clicked on a link in the electronic mail message and entered the
19  password, a 15-20 minute presentation began, describing the EARR program and explaining the
20  Agreement.  (Dkt. 16-1, ¶ 10; Dkt. 16-2, ¶ 6.)  The training module was interactive and contained
21  a consent form for the employee's electronic signature if the employee consented to review the
22  Agreement electronically.  (Dkt. 16-1, ¶ 10.)  The full Agreement was provided "with an
23  explanation."  (Dkt. 16-1, ¶ 10.)  To consent to the Agreement, the employee clicked a box.  (Dkt.
24  16-1, ¶ 10.)  A confirming electronic mail message would then be sent to the employee and to an
25  Iron Mountain storage system accessed by Bjorkman.  (Dkt. 16-2, ¶¶ 8, 11.)  According to the
26  EARR Program and the Agreement, employees who chose not to sign the Agreement chose to end
27  their employment with Ecolab.  (Dkt. 16-2, Ex. 1, pp. 17, 25-26.)  Employees could obtain a hard
28  copy of the Agreement if desired.  (Dkt. 16-2, ¶ 7.)

3

The October 8, 2014 electronic mail message asked employees to complete the training and sign the Agreement by October 22, 2014. (Dkt. 16-1, ¶ 11.) On October 13, 2014 another electronic mail message was sent to those who failed to complete the EARR training module, the subject of which was entitled "Mediation and Arbitration Agreement – TIME SENSITIVE." (Dkt. 16-1, ¶ 13; Dkt. 16-2, ¶ 10.)  The electronic mail message contained the same personalized link and password as the prior electronic mail message and again asked employees to complete the module by October 22, 2014. (Dkt. 16-1, ¶ 13.)

Haley was in charge of managing data that Corepedia automatically forwarded to Haley every day. (Dkt. 16-1, ¶ 12.) The data included the identities of people who logged into and accessed the training module and the time of access. (Dkt. 16-1, ¶ 12.) The data also included information about whether the employee signed the Agreement and at what time they signed. (*Id.*) Bjorkman was responsible for making sure employees signed the Agreement by the deadline. (Dkt. 16-2, ¶ 9.)

Haley and Bjorkman can still access the electronic data generated by the EARR Program. (Dkt. 16-1, ¶ 15, Dkt. 16-2, ¶12.) According to the data, Plaintiff started the EARR Program at 3:52 p.m. on October 15, 2014 and completed the EARR training module by clicking that she agreed to the Agreement at 4:09 p.m. that same day. (Dkt. 16-1, ¶ 15; Dkt. 16-2, ¶ 12.) Anderson performed a search through the archived electronic mail message system for Plaintiff's email address and found an electronic mail message sent to Plaintiff on October 8, 2014 regarding the EARR Program, the reminder electronic mail message sent on October 13, 2014, and the confirming electronic mail message sent on October 15, 2014. (Dkt. 16-3, ¶¶ 3, 4, 5, 6.)

Anderson states that other employees, including managers and personnel in the information technology group, cannot access the mail accounts of Ecolab employees. (Dkt. 16-3, ¶ 7.) If an employee loses or must change a password remotely, that employee must provide private, personal information to access the account. (Dkt. 16-3, ¶ 8.) An employee who changes a password remotely cannot change it to the prior password. (Dkt. 16-3, ¶ 4.) This "prevent[s] someone from temporarily changing an email password and then changing it back to the original password without the account holder knowing." (Dkt. 16-3, ¶ 9.) After an employee is no longer

4

1    employed by Defendant, the IT department can access archived electronic mail messages from the
2    employee's email account. (Dkt. 16-3, ¶ 7.)

### C. Plaintiff's Evidence

Plaintiff's recitation of the facts has not changed since the initial motion to compel. Plaintiff states that there is no agreement to arbitrate between the parties, and nothing in the renewed motion has changed Plaintiff's memory. (Cerletti Dec. at Dkt. 20-1, ¶ 3.) Plaintiff provided Defendant with her home address when she was an employee, and that address was kept current. (Dkt. 20-1, ¶ 5.) Plaintiff received communications about the terms of her employment from Defendant at Plaintiff's home address. (Dkt. 20-1, ¶ 5.) However, Plaintiff did not receive mail from Defendant regarding the EARR Program and Agreement at her home address. (Dkt. 20-1, ¶¶ 5-6.)

As to electronic access, Defendant provided Plaintiff with a laptop computer, iPhone, and an email account. (Dkt. 20-1, ¶ 7.) When Plaintiff worked remotely and had difficulty accessing her work, she contacted Defendant's Technical Support or IT, and she received assistance by phone or electronic mail message. (Dkt. 20-1, ¶ 7.) Changing an email password was "extremely simple." (Dkt. 20-1, ¶ 7.) "Minimal information was required to identify yourself to Defendant's IT, providing only my employee name, birth date and job title." (Dkt. 20-1, ¶ 7.) Managers communicated that they had access to internal accounts to access reports or documents. (Dkt. 20-1, ¶ 7.)

Plaintiff no longer has access to her calendar, laptop computer, or documents to confirm her activities in October 2014, but Plaintiff is certain she did not receive the October 8, 2014 notification about the EARR Program, that she did not log into the training module, and that she did not consent to the Agreement. (Dkt. 20-1, ¶¶ 9-17.) Plaintiff did not receive the electronic confirmation that she agreed to the mediation and arbitration policy, did not receive the rules of the American Arbitration Association ("AAA") at any time, did not know about the implementation of the mediation and arbitration program, and did not waive her rights to a jury trial. (Dkt. 20-1, ¶¶ 18-21.) Plaintiff did not receive a copy of the text of the Agreement, consent policy, training model, or confirming electronic mail message until after her employment was

terminated and after her counsel requested copies of those documents in July 2017.  (Dkt. 20-1 ¶¶ 22, 23.)  Finally, Plaintiff finds that the EARR Program and policy are "extremely confusing" and "misleading."  (Dkt. 20-1, ¶ 25.)

**DISCUSSION**

**A.    Legal Standard**

The FAA applies to arbitration agreements in any contract affecting interstate commerce.  *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 118-19 (2001); 9 U.S.C. § 2. Likewise, the CAA provides for enforcement of a valid arbitration agreement.  *See* Cal. Code Civ. Proc. § 1281.2; *Armendariz v. Foundation Psychcare Services, Inc.,* 24 Cal.4th 82 (2000).  The FAA's "primary purpose is to ensure that private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis. Inc. v. Bd. of Trs. Of Leland Stanford Junior Univ.,* 489 U.S. 468, 479 (1989). Therefore, an aggrieved party may petition a United States district court for an order directing that arbitration proceed as provided for in the arbitration agreement.  9 U.S.C. § 4.  Once the matter is referred to arbitration, the district court shall stay the federal proceeding.  *Id.,* § 3.

Under the FAA, arbitration must be compelled where (1) a valid agreement to arbitrate exists and (2) the dispute falls within the scope of that agreement.  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000).  The FAA reflects a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)). However, arbitration "is a matter of consent, not coercion."  *Volt,* 489 U.S. at 479.  The FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or derive their meaning from the fact that an agreement to arbitrate is at issue."  *AT&T Mobility v. Concepcion,* 563 U.S. 333, 339 (2011) (citing *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)).

A party seeking to compel arbitration must prove by a preponderance of the evidence the existence of an arbitration agreement, and a party opposing the petition bears the burden of proving by a preponderance of evidence any fact necessary to its defense.  *Olvera v. El Pollo*

*Loco, Inc.,* 173 Cal.App.4th 447, 453 (2009) (citing *Rosenthal v. Great Western Fin. Securities Corp.,* 14 Cal.4th 394, 413 (1996)). Where the parties agreed to arbitrate, courts apply a presumption of arbitrability as to particular grievances, "and the party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable." *Wynn Resorts, Ltd., v. Atlantic-Pacific Capital, Inc.,* 497 Fed.Appx. 740, 742 (9th Cir. 2012) (internal citations omitted). Therefore, courts should "construe ambiguities concerning the scope of arbitrability in favor of arbitration…." *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 66 (1995).

In determining whether to compel arbitration, the court may not review the merits of the dispute; rather, the role of the court is limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.,* 533 F.3d 114, 119 (9th Cir. 2008). If the answers to these questions are yes, the court must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985).

The principles of state contract law are applied in determining the validity of the arbitration agreement. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995); *Adams,* 279 F.3d at 892. An arbitration agreement must be in writing but need not be signed by the party against whom it is asserted, because acceptance may be implied in fact. *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev't (US), LLC,* 55 Cal.4th 233, 236 (2012). An employee need not read the arbitration clause for it to be binding. *Id.* When an employer unilaterally imposes an arbitration policy on its employees, "continued employment constitutes … acceptance of [the] agreement by [the] employer." *Craig v. Brown & Root, Inc.,* 84 Cal.App.4th 416, 420 (2000). However, there can be no implied consent without receipt or knowledge of the agreement. *See Metters v. Ralphs Grocery Store Co.,* 161 Cal.App.4th 696, 702 (2008). Further, where dispute resolution policies or agreements expressly require an employee's signature to be valid and no signature exists, California courts have denied motions to compel arbitration. *Gorlach v. Sports Club Co,* 209 Cal.App.4th 1497 (2012).

Courts have found sufficient evidence of consent despite lack of explicit agreement by the employee. In *Craig v. Brown & Root, Inc.,* the California Court of Appeals held that the

7

1    employee's continued employment constituted consent to the arbitration agreement,
2    notwithstanding the fact that she never signed an acknowledgement form or had knowledge of the
3    dispute resolution program. 84 Cal.App.4th 416. There, the employer presented evidence that it
4    mailed the employee a copy of the policy to her correct address and that the copy of the policy was
5    not returned, and those facts created a presumption that she received a copy of the policy. *Id.* at
6    420.
7            In *Davis v. Nordstrom, Inc.,* the Ninth Circuit held that unilateral changes to the terms of
8    the employee handbook that included changes to the arbitration agreement could be enforced, so
9    long as the employer has given notice of the changed terms. 755 F.3d 1089, 1094 (2014). In that
10   case, Nordstrom sent a letter to the employee that the terms would go into effect thirty days later.
11   *Id.* In *Kruzich v. Chevron, Corp.,* the employer's dispute resolution policy expressly said that the
12   continued employment at Chevron means that the employee agreed to be bound by the arbitration
13   agreement. 2011 WL 6012959, at *4 (N.D. Cal. Dec. 1, 2011). Because the employee continued
14   his employment, the court held that the employee agreed to be bound by the arbitration agreement.
15   *Id.*
16           In *Hicks v. Macy's Department Stores, Inc.,* the employer instituted a voluntary binding
17   arbitration program in which the employee was required to submit an opt-out form or be bound.
18   2006 WL 2595941, at *1-3 (N.D. Cal. Sept. 11, 2006). The employee's failure to opt-out was
19   deemed acceptance to the agreement and revised terms of employment. *Id.*
20           A key to these cases is that the employer established that the arbitration agreement was
21   sent to the employee.
22   **B.     Analysis**
23           In support of the motion to compel, Defendant provides evidence of an existing arbitration
24   agreement to which Plaintiff consented. Defendant argues that the Court should therefore compel
25   Plaintiff to submit her claims to binding arbitration and should either stay or dismiss this court
26   action. Plaintiff argues that Defendant's motion should be denied because: (1) Defendant failed to
27   comply with Civil L.R. 7-9 for filing a motion for reconsideration, (2) the evidence in support of
28   the motion should be stricken, (3) the Agreement is not a valid contract and cannot be enforced,

and (4) the motion should be denied because the Agreement is procedurally and substantively unenforceable.

### 1. The Court Provided Defendant With Permission To Renew The Motion.

The Court denied the Defendant's previous motion without prejudice. (Dkt. 14.) The Court specified:

> If Defendant intends to bring a further motion, it must do so swiftly to avoid any assertion of waiver and to avoid any prejudice to Plaintiff. Given that the Court has not made a determination as to Plaintiff's claims of unconscionability, Plaintiff may renew these arguments should another motion be brought by Defendant.

(*Id.* at 7:19-23.) In making this statement, the Court invited Defendant to bring another motion if the proper evidence existed and invited Plaintiff to reargue her position regarding the unconscionability of the Agreement, since the Court's order did not address that issue. The Court also invited the parties to address these issues in a subsequent motion at oral argument. Therefore, Defendant's motion is properly before the Court.

### 2. Plaintiff's Objections to Evidence.

Plaintiff objects to all of the declarations included in support of Defendant's motion. With regard to Anderson's declaration, Plaintiff contends that Anderson's statement that he is "'familiar with certain' protocols" is insufficient to "verify" Anderson's personal knowledge. (Dkt. 20, pp. 3-4.) Without Anderson's personal knowledge, the declaration fails to properly authenticate the attached exhibits. (*Id.,* p. 4.) Finally, Plaintiff asserts that Anderson "failed to provide an alleged search result for Exhibits C and D," and asks that the Anderson declaration be stricken in its entirety. (*Id.*)

Plaintiff's objections to Anderson's declaration are OVERRULED. Anderson specifies that he is familiar with "archiving and security protocols related to information technology and preservation of electronic information," and his knowledge is sufficiently specific and related to the evidence presented in his declaration. Anderson sufficiently laid a foundation as to his personal knowledge. (Dkt. 16-3, ¶ 2.) The Court finds that a sufficient foundation was laid for Exhibits C and D. (*Id.,* ¶¶ 2-6.)

Plaintiff objects to the Bjorkman declaration on the grounds that it "lacks personal

9

knowledge as to the alleged electronic evidence." (Dkt. 20, p. 4.) Plaintiff alleges that Bjorkman only established that she had personal knowledge of the content of the October 2014 electronic mail messages as a member of a team of writers, but makes statements regarding the maintenance of electronic data without a proper foundation. (*Id.*) Plaintiff also objects to Exhibit 2 on the grounds that it is not properly authenticated and it is barely legible. (*Id.*)

Plaintiff's objection that Bjorkman lacks personal knowledge of the electronic evidence noted in her declaration is SUSTAINED as to the second sentence in ¶ 13 regarding access to email accounts, but is otherwise OVERRULED. Bjorkman states that "it was [her] job to maintain and track the implementation of the Ecolab Associate Resolution Resource ("EARR") program." (Dkt. 16-2, ¶ 3.) The Court does not interpret the sentence at paragraph 3 as meaning that Bjorkman's personal knowledge was limited to only the event of drafting the content of the communications. To the contrary, Bjorkman states that she had access to data regarding the training module and that Bjorkman was responsible for keeping track of employees who accessed and signed the Agreement, as well as to answer any employee questions regarding the EARR Program. (*Id.*, ¶¶ 8-9.) The Court further finds that Bjorkman sufficiently authenticated and laid a foundation for Exhibit 2.

Finally, Plaintiff objects to the Haley declaration on the grounds that Haley failed to provide an explanation as to how the lists of email addresses of employees referenced in paragraph 7 were generated for the October 2014 electronic mail messages and whether Plaintiff was on the list. (Dkt. 20, p. 4.) Therefore, Plaintiff asks that Haley's declaration be stricken in its entirety. (*Id.*)

Plaintiff's objection is OVERRULED. Haley, as Director of Payroll and HR Information Systems, had access to employees' information that enabled her to provide a list of email addresses to Corepedia for every Ecolab employee who had an email address in the United States. (Dkt. 16-1, ¶ 7.) Haley managed the EARR training, was responsible for working with Corepedia, kept track of the employees who completed the program, and had access to the data indicating the time and date employees, including Plaintiff, completed the EARR Program. There is a sufficient foundation to establish that the employees with email accounts were sent electronic mail messages

and that Plaintiff accessed the EARR Program.

### 3. A Preponderance of the Evidence Establishes that Plaintiff Consented to the Agreement.

A party seeking to compel arbitration must prove by a preponderance of the evidence that the arbitration agreement exists. *Olvera,* 173 Cal.App.4th at 453. In turn, the party opposing the motion bears the burden of proving by a preponderance of the evidence any fact necessary to its defense. *Id.* Plaintiff argues that Defendant failed to establish that a valid arbitration agreement exists because Defendant cannot establish that Plaintiff electronically signed the Agreement. (Dkt. 20, pp. 4-6.) While an arbitration agreement must be in writing, it need not be signed by the party to whom it applies, since acceptance may be implied in fact. *Pinnacle Museum Tower Ass'n,* 55 Cal.4th at 236. Here, the EARR training module and Agreement specifically provided that employees who chose not to consent to the Agreement were "choosing to end their employment with Ecolab." (Dkt. 16-2, Ex. 1, pp 17, 25-26.) Assuming Plaintiff chose not to click the consent box, by simply accessing the EARR Program and continuing her job duties, Plaintiff consented to the Agreement.

However, Plaintiff maintains that she "did not receive, review nor was aware of" the Agreement or related documents. (Dkt. 20-1, ¶¶3, 5-14, 16.) Defendant produced evidence that Plaintiff completed the EARR Program on October 15, 2014 and consented to the Agreement at 4:09 p.m. that day. The evidence includes the data Haley received from Corepedia. (Dkt. 16-1, ¶ 15.) The data from Corepedia is confirmed by the data Bjorkman accessed from Iron Mountain. (Dkt. 16-2, ¶ 12.) The data is also supported by the archive that Anderson accessed, and that data confirmed that Plaintiff received three electronic mail messages, including a confirming electronic mail message that Plaintiff completed the EARR Program on the same date. (Dkt. 16-3, ¶ 4.)

Also significant is Defendant's reliance on security precautions for the EARR Program. In *Espejo v. S. Cal. Permanente Med. Group,* the court found that the defendants met their burden by showing that defendants' security precautions regarding transmission and use of an applicant's unique user name and password, as well as the steps required to sign the employment agreement, ensured that the proper party accessed the agreement. 246 Cal.App.4th 1047, 1060 (2016). The

security precautions Defendant used for the EARR Program also required a unique user name and password and similar steps necessary to electronically sign the Agreement. Thus, access to Plaintiff's email account was required to view the training module and accept the Agreement. (Dkt. 16-1, ¶ 9.)

Plaintiff implies that someone other than Plaintiff must have accessed Plaintiff's email account and consented to the Agreement on Plaintiff's behalf, but that the evidence provided by Anderson refutes that theory. Neither management nor employees in the information technology group had access to Ecolab employees' email accounts. (Dkt. 16-3, ¶¶ 7-9.) Moreover, Anderson was able to locate the archived electronic mail message that Plaintiff received on October 15, 2014, and that message put Plaintiff on notice that consent was provided from her email address. (Dkt. 16-3, ¶ 4.)

Plaintiff's statements regarding the simplicity of changing an email password remotely does not negate the security protocol described by Anderson. While a password may be easy to change, access to the password was limited, and the password could not be changed back to the previous password to protect against the sort of fraudulent activity that Plaintiff suggests. (Dkt. 16-3, ¶¶ 8-9.) Further, the fact that managers had access to employee reports or documents does not demonstrate that managers had access to employees' electronic mail messages. Access to documents in a computer work file is not synonymous with access to employees' electronic mail messages. It is not uncommon for employees' work product to be stored on an employer's computer system, accessible to management and others.

Plaintiff is in the unenviable position of having to prove a negative – that she did not receive or consent to the Agreement. Defendant has established by a preponderance of the evidence that the Agreement was sent to Plaintiff and that Plaintiff consented. Plaintiff has not met the burden of establishing by a preponderance of evidence those facts necessary for her defense. Therefore, the Court finds that Plaintiff consented to the Agreement.

**4.    The Agreement Is Enforceable.**

The defense of unconscionability may invalidate and render arbitration agreements unenforceable under both the FAA (19 U.S.C. § 2) and California Code of Civil Procedure 1281.

12

*Armendariz v. Fund. Health Psychcare Servs., Inc.,* 24 Cal.4th 83, 114 (2000) (citing *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)). To be unenforceable as unconscionable, a contract must be both procedurally and substantively unconscionable. *Armendariz,* 24 Cal.4th at 114. Both elements of unconscionability must be present to render a contract unenforceable, but they need not be present in the same degree. *Id.* "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

In *Armendariz,* the California Supreme Court provided that a mandatory employment arbitration agreement must include the following to be enforceable: (1) a neutral arbitrator, (2) adequate discovery, (3) a written award, (4) availability of all of the types of relief that would be available in court, and (5) the agreement must "not require employees to pay either unreasonable costs or any arbitrator's fees or expenses as a condition of access to the arbitration forum." *Id.* at 102-03 (citation omitted). The burden is on the party challenging the arbitration agreement to prove both procedural and substantive unconscionability. *Serafin v. Balco Properties, Ltd., LLC,* 235 Cal.App.4th 165, 179 (2015) (citing *Crippen v. Central Valley RV Outlet, Inc.,* 124 Cal.App.4th 1159, 1164-65 (2004)).

### a. Procedural Unconscionability

Plaintiff argues that the Agreement is one of adhesion because it was offered on a take-it-or-leave-it basis with no opportunity for negotiation. "Although adhesion contracts often are procedurally oppressive, this is not always the case." *Poublon v. C.H. Robinson Co.,* 846 F.3d 1251, 1261 (9th Cir. 2017) (quoting *Morris v. Redwood Empire Bancorp,* 128 Cal.App.4th 1305, 1320 (2005)). The adhesive nature of a contract, without more, gives rise "to a low degree of procedural unconscionability at most." *Id.* at 1261-62. Here, Plaintiff had no option but to accept the Agreement if Plaintiff were to remain employed by Defendant. Therefore, the Agreement was at least somewhat procedurally unconscionable.[1]

---

[1] In *Bankowitz v. Ecolab, Inc.,* No. 17-cv-2924, 2017 WL 4642284 (N.D. Cal. Oct. 17, 2017), which dealt with the same Ecolab agreement, Judge Edward Chen came to the same conclusion. Judge Chen held that the Agreement "is a slightly oppressive contract of adhesion because it was imposed upon Plaintiffs as a condition of employment with no opt out provision."

13

If an employee is required to sign a non-negotiable employment agreement as a condition of employment, "'but there is no other indication of oppression or surprise,' then 'the agreement will be enforceable unless the degree of substantive unconscionability is high.'" *Poublon,* 846 F. 3d at 1261 (quoting *Serpa v. Cal. Sur. Investigations, Inc.,* 215 Cal.App.4th 695, 704, *as modified* (April 19, 2013), *as modified* (April 26, 20123) (internal quotation marks omitted)).

Plaintiff also argues that the Agreement is procedurally unconscionable because the rules for the AAA were not attached to the Agreement, although the rules were accessed by a hyperlink within the Agreement. (Dkt. 16-2, Ex. 1, p. 26.) Plaintiff relies on *Trevedi v. Cuerexo Technology Corp.,* 189 Cal.App.4th 387 (2010) for the proposition that failure to provide a copy of the AAA rules is procedurally unconscionable. *Trivedi* stands "for the proposition that courts will more closely scrutinize substantive unconscionability of terms that were artfully hidden by the simple expedient of incorporating them by reference rather than including them in or attaching them to the arbitration agreement." *Baltazar v. Forever 21,* 62 Cal.4th 1237, 1246 (2016) (citations omitted).

However, incorporation by reference without more does not affect the finding of procedural unconscionability. *Id.* "*Baltazar's* holding is consistent with California's general rule that 'parties may validly incorporate by reference into their contract the terms of another document' provided certain conditions are met." *Poublon,* 846 F.3d at 1262 (quoting *Slaught v. Bencomo Roofing Co.,* 25 Cal.App.4th 744, 748 (1994) (citations omitted)). As in *Baltazar,* Plaintiff's argument "might have force if her unconscionability challenge concerned some element of the AAA rules of which she was unaware when she signed the arbitration agreement." *Id.* Here, Plaintiff's argument is not the surrender of rights hidden in the AAA rules. Rather, Plaintiff simply challenges the Agreement because the AAA rules were not attached to the Agreement. Other courts have found the practice of incorporating by reference the AAA rules acceptable. *See Haisha Corp. v. Sprint Solutions, Inc.*, No. 14-2773, 2015 WL 224407, at *7-8, (S.D. Cal. Jan. 15, 2015); *Collins v. Diamond Pet Food Processors of California, LLC,* No. 13-0113, 2013 WL

---

*Id.,* at *2.

1791926, at *5 (E.D. Cal. Apr. 26, 2013); *Miguel v. JPMorgan Chase Bank, N.A.,* No. 12-3308, 2013 WL 452418, at *5 (C.D. Cal. Feb. 5, 2013); *Ulbrich v. Oversock.Com, Inc.,* 887 F.Supp.2d 924, 932-33 (N.D. Cal. 2012). The Court rejects Plaintiff's argument that failure to provide a copy of the AAA rules renders the Agreement unconscionable.

### b. Substantive Unconscionability

Substantive unconscionability concerns the terms of the arbitration agreement and whether those terms are overly harsh or one-sided. *Armendariz,* 24 Cal.4th at 114. Plaintiff alleges that the Agreement is substantively unconscionable because (1) it does not provide for adequate discovery, (2) it does not provide for a neutral arbitrator, (3) it is not mutually enforceable, (4) the confidentiality provision is substantively unconscionable, (4) the cost and fee allocation is substantively unconscionable, (5) it is misleading, and (6) it requires mediation.

### 1. Discovery

Plaintiff asserts that the AAA rules are unclear, but the AAA rules appear to call for discovery at the discretion of the arbitrator. Plaintiff claims that she will require "extensive discovery" and that the AAA provision does not ensure this. (Dkt. 20, pp. 8-9.)

According to the AAA rules, the arbitrator has the authority

> to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

Employment Arbitration Rules and Mediation Procedures, r. 9 (American Arb. Ass'n 2017).

"Numerous courts have held that the AAA discovery rules for employment disputes satisfy *Armendariz's* adequate discovery requirement." *Saline v. Northrop Grumman Corp.,* No. 08-cv-8398, 2009 WL 10674037, at *6 (C.D. Cal. Feb. 9, 2009) (citing *Riegert v. Barker,* No. B193471, 2007 WL 4201091, at *12, (Cal. App. Nov. 29, 2007). Courts regard the AAA rules as being "neutral and fair." *Collins*, 2013 WL 1791926, at *7 (citing *Lagatree v. Luce, et al.,* 74 Cal.App.4th 1105, 1126-27, 1130 n. 21 (1999) ("[T]he AAA rules governing discovery and remedies are fair to claimants.")). In light of the foregoing, the Court finds the AAA discovery rule does not render the Agreement substantively unconscionable.

15

### 2. Neutral Arbitrator

Plaintiff also asserts than the Agreement is substantively unconscionable arbitration favors Ecolab, as a "repeat player" over an employee which would lack the knowledge gained through arbitral decisions. This issue was also raised in *Bankowitz.* There, plaintiffs also argued the "repeat player effect" claim which Judge Chen found insufficient to establish substantive unconscionability. *Id.* at *4. The repeat player effect, without any evidence of bias of AAA arbitrators, does not support a finding of unconscionability. *Id.* (citing *Nagrampa v. MailCoups, Inc.,* 469 F.3d 1257, 1285 (9th Cir. 2006)). "Particularized evidence demonstrating impartiality" is required. *Nagrampa,* 469 F.3d at 1285. As in *Bankowitz,* Plaintiff made no effort to present particularized evidence demonstrating impartiality. "Absent evidence to the contrary, California courts have generally found the AAA provides a neutral forum for resolution." *Bankowitz*, 2017 WL 4642284, at *4. This Court also finds that this provision does not render the Agreement unconscionable.

### 3. Mutuality

Plaintiff claims that Defendant "ensured a lack of mutuality, carving out claims which are specific to an employer such as restraining orders, patent, intellectual property and trade secret matters." (Dkt. 20, 10: 9-11.) An agreement that is "unfairly one-sided for an employer with superior bargaining power" lacks mutuality. *Armendariz,* 24 Cal.4th at 117-18. One-sidedness is present where an employer carves out exclusive court access for itself while depriving its employees of similar access. *Id.*

Here, Plaintiff argues that Defendant has ensured lack of mutuality by carving out claims specific to an employer such as restraining orders, patent, intellectual property and trade secret matters. However, contrary to Plaintiff's contentions, the Agreement does not carve out any claims from arbitration; rather, either party can seek injunctive relief from trade secret, patent, intellectual property or proprietary information. (Dkt. 16-2, Ex. 1, ¶ 2 (E).) Given that there are no intellectual property claims in this case, the provision does not render the Agreement unconscionable. *See Pope v. Sonatype, Inc.,* 15-cv-0956, 2015 WL 2174033, at *5 (N.D. Cal. May 8, 2015) (citing *Lara v. Onsite Health,* 896 F.Supp.2d 831, 847 (N.D. Cal. 2012)).

16

### 4. Confidentiality

Plaintiff maintains that the Agreement includes a confidentiality provision which prevents an employee from contacting other employees to investigate claims and support its case. As noted in *Davis v. O'Melveny & Meyers,* 485 F.3d 1066, 1078-79 (9th Cir. 2007) (overruled on other grounds), a substantively unconscionable confidentiality provisions acts as a "gag order" on plaintiffs, preventing them from mitigating the advantages of being a "repeat player." *Id.* at 1078 (citing *Ting v. AT&T,* 319 F.3d 1126 (9th Cir. 2003). While this Agreement has a provision entitled "confidentiality," it is unlike the agreement in *Davis,* where the confidentiality clause was so broad as to preclude employees from sharing any aspect of the arbitration to anyone not directly involved, thus preventing employees from contacting other employees to build their cases. The Agreement here merely states that the arbitration will not be "open to the public." (Dkt. 16-2, Ex. 1, ¶ 5.) It does not act to place a gag order on employees or interfere with the ability to contact others in order to build a case. Therefore, the provision does not render the Agreement substantively unconscionable.

### 5. Cost and Fee Allocation

Plaintiff argues that the Agreement is unconscionable because its fee-sharing arrangement requires the employee to bear expense that he would not otherwise bear in Court. *See Armendariz,* 24 Cal.4th at 110. Plaintiff claims that the fee provisions "run afoul of the code and appear to be unique to the Agreement." (Dkt. 20, 12:9-10.) Upon review of the Agreement, the Court finds no fee provision indicative of an expense that Plaintiff would not incur in court proceedings. Defendant agrees to incur the initial filing fees required by the AAA, as well as the hearing fee and arbitrator fee for the hearing. All discovery and expert costs are the responsibility of the party initiating the discovery or requesting the services, just as in the judicial system. Unlike *Trivedi,* 189 Cal.App.4th at 396, on which Plaintiff relies, there is no provision permitting recovery of fees and costs by the prevailing party. Rather, the Agreement provides for the recovery of fees and cost in accordance with state law. (Dkt. 16-2, Ex. 1, ¶¶ 10(B)(4), 10(B)(6)(g).) Thus, the Court does not find that the fee provisions render the Agreement substantively unconscionable.

///

### 6. Knowing and Voluntary

Plaintiff claims that the Agreement is "not knowing and voluntary" in that it is "extremely misleading, complex, threatening, and caused Plaintiff upon review after her termination to reasonably believe no rights were being waived." (Dkt. 20, 12:12-17.) Plaintiff cites to *Titan Group v. Sonoma Valley County Sanitation Dist.,* 164 Cal.App.3d 1122, 1128-29 (1985) for the proposition that the Agreement cannot be enforced. *Titan* involved an arbitration agreement between a construction contractor and a sanitation district for construction of a waste water treatment facility. At issue was whether the agreement was enforceable because it failed to provide a clear waiver to a jury trial. Here, the Agreement is very clear. "Neither the Company nor its present and former Associates may commence an action in court concerning a Dispute covered by the Agreement." (Dkt. 16-2, Ex. 1, ¶ 1.) The Court finds Plaintiff's argument unpersuasive.

### 7. Mediation Requirement

Plaintiff contends that she is required to first mediate her claim before arbitration, thus providing Defendant with the ability to review Plaintiff's case early, with "little more than an exploratory evidentiary hearing." (Dkt. 20, 12:19-13:3.) However, the Agreement does not require mediation. The Agreement states that the "dispute will be referred to mediation only if both parties agree to mediate." (Dkt. 16-2, Ex. 1, ¶ 10(A).) Therefore, the Plaintiff's argument is not persuasive.

Finally, Plaintiff contends that the Agreement is rife with unconscionability and cannot be cured. The Court disagrees. As provided above, the Agreement has minor procedural unconscionability: Plaintiff was required to enter into the Agreement in order to maintain her employment at Ecolab. However, that alone is insufficient to render an arbitration agreement unenforceable. Plaintiff's burden includes establishing a high level of substantive unconscionability. *Poublon,* 846 F.3d at 1261-62. Plaintiff has not established that the Agreement is substantively unconscionable. Therefore, the Court finds that the Agreement is enforceable.

/ / /

### D. The Dispute Falls within the Scope of the Agreement.

Plaintiff's lawsuit alleges FEHA violations, violation of Cal. Government Code § 12900, Cal. Labor Code § 201 *et seq.,* and wrongful termination. (Dkt. 1.) The Agreement defines a "Dispute" as "any and all claims or controversies alleging violations of federal, state, local or common law between an Associate and the Company (and vice versa) arising out of or in any way related to the application for employment, employment or cessation of employment with the Company…." (Dkt. 16-2, Ex. 1, ¶ 2 (E).) Therefore, the Court finds that the claims in Plaintiff's lawsuit fall within the scope of the Agreement.

### CONCLUSION

Defendant establishes by a preponderance of the evidence that a valid arbitration agreement, the Agreement, exists and that the dispute at issue falls within the scope of the Agreement. Plaintiff fails to meet the burden of proving by a preponderance of the evidence those facts necessary to defeat the motion. Further, Plaintiff fails to meet the burden of proving that the arbitration agreement is unconscionable. Therefore, the Court GRANTS Defendant's motion to compel. This matter is referred to arbitration, and the federal proceeding is stayed pursuant to 9 U.S.C. § 4.

**IT IS SO ORDERED.**

Dated: April 24, 2018

*Sallie Kim*

SALLIE KIM
United States Magistrate Judge